The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DAVID TIPPENS, <br><br> Defendant. | NO. CR16-5110 RJB <br><br> GOVERNMENT'S RESPONSE TO MOTION TO COMPEL |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> GERALD LESAN, <br><br> Defendant. | NO. CR15-387 RJB <br><br> GOVERNMENT'S RESPONSE TO MOTION TO COMPEL |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BRUCE LORENTE, <br><br> Defendant. | NO. CR15-274 RJB <br><br> GOVERNMENT'S RESPONSE TO MOTION TO COMPEL |

GOVERNMENT'S RESPONSE TO MOTION TO COMPEL - 1
CR16-5110RJB/CR15-387RJB/CR15-274RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# I. INTRODUCTION

Defendants David Tippens, Bruce Lorente, and Gerald Lesan have been charged with possession and receipt of child pornography following residential search warrants that resulted in the seizure of digital devices containing child pornography. All three were identified through an FBI investigation into a child pornography website, "Playpen," operating on the anonymous Tor network. During a two-week period in late February 2015, the FBI seized and assumed administrative control of the site—which had already been operating for six months. During that period and pursuant to a warrant/Title III order obtained in the Eastern District of Virginia, the FBI deployed a Network Investigative Technique (a "NIT") and monitored Playpen traffic in order to identify and apprehend its users.

With this motion to compel, Defendants seek additional discovery related to the FBI's operation of Playpen, including privileged Department of Justice memoranda, none of which has any bearing on the legal and factual issues involved in their criminal prosecutions. The discovery sought by Defendants has no relevance to the preparation of their defense, and their contrary claims are premised on a misreading of the applicable precedent and speculative assertions of materiality, that, if accepted, would effectively relieve them of any obligation to demonstrate the relevance of the information they demand. Rule 16 does not countenance such an approach, and their motion should be denied.

# II. LEGAL STANDARDS

The applicable legal standard is straightforward. Under Rule 16, a criminal defendant has a right to inspect documents, data, or tangible items within the government's "possession, custody, or control" that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Evidence is "material" under Rule 16 only if it is helpful to the development of a possible defense. *United States v. Olano*, 62 F.3d 1180, 1203 (9th Cir. 1995). "[I]n the context of Rule 16 'the defendant's defense' means the

GOVERNMENT'S RESPONSE TO MOTION TO COMPEL - 2
CR16-5110RJB/CR15-387RJB/CR15-274RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

defendant's response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996).[1]

Moreover, regardless of whether Rule 16 applies to permit discovery in support of a possible pretrial motion, in order to compel discovery under subsection (a)(1)(E), a defendant must make a "threshold showing of materiality." *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir.1995). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present *facts* which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (emphasis added). "[O]rdering production by the government without any preliminary showing of materiality is inconsistent with Rule 16." *Mandel*, 914 F.2d at 1219. In fact, "[w]ithout a factual showing there is no basis upon which the court may exercise its discretion, and for it to ignore the requirement is to abuse its discretion." *Mandel*, 914 F.2d at 1219. Moreover, Rule 16 "does not authorize a fishing expedition." *United States v. Rigmaiden*, 844 F. Supp. 2d 982, 1002 (D. Ariz. 2012).

### III.   ARGUMENT

As detailed below, Defendants have made no showing of materiality that would support their discovery requests. Even where they offer something beyond a conclusory assertion of materiality, their reasoning is circular: *i.e.*, discovery is necessary to answer a question Defendants would like answered, even though there is no explanation why those answers would assist as they prepare a defense. Before taking each request in turn, however, one issue deserves attention.

Throughout their motion, Defendants assert that their various discovery requests are material because they are relevant to their motion seeking dismissal based on alleged

---

[1] Defendants point to *United States v. Soto-Zuniga*, 2016 WL 4932319 (9th Cir. Sept. 16, 2016). To the extent that *Soto-Zuniga* provides support for Defendants' expansive definition of "defense" under Rule 16, the government continues to believe that it conflicts with *Armstrong*. The Court in that case has extended the time for filing of a petition for *en banc* review to October 31, 2016.

GOVERNMENT'S RESPONSE TO MOTION TO COMPEL - 3
CR16-5110RIB/CR15-387RJB/CR15-274RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

outrageous government conduct. Two themes emerge. First, Defendants, as they did in their dismissal motion, repeatedly chastise the FBI by claiming that it distributed child pornography. And second, they claim that the operation was insufficiently sensitive to the needs and rights of the victims of child pornography offenses. Such oversimplifications are no doubt convenient rhetorical tools, but they do not actually advance Defendants' materiality argument in any meaningful way. Even if Defendants had the right of it (and they do not), these factors have no bearing on the legal test governing claims of outrageousness.

The Ninth Circuit has identified six factors that guide the outrageousness inquiry:

> (1) known criminal characteristics of the defendant[]; (2) individualized suspicion of the defendant[]; (3) the government's role in creating the crime of conviction; (4) the government's encouragement of the defendant[] to commit the offense conduct; (5) the nature of the government's participation in the offense conduct; and (6) the nature of the crime being pursued and necessity for the actions taken in light of the nature of the criminal enterprise at issue.

*United States v. Black*, 733 F.3d 294, 303 (9th Cir. 2013). Plainly, the focus of the outrageousness analysis is the defendant's criminal behavior, its relationship to the government's conduct, and the investigative need supporting the particular investigative technique. Just as in their motion to dismiss, Defendants neither cite nor endeavor to apply this test. Instead, they simply identify those aspects of the FBI's operation with which they disagree and conclude that what the FBI did was outrageous. Whatever its relevance to Defendants' preferred legal test, the requested discovery has zero bearing on the actual legal test applied by the Ninth Circuit.

**A.   Requests 1 and 7 seek information that is privileged and excluded from discovery under Rule 16, in addition to being irrelevant and immaterial.**

Requests 1 and 7 seek documents, including legal memoranda, related to the "government's review and approval of" the FBI's operation and the "legality of the FBI's operation of Playpen." Motion to Compel at 2, 4. In each case, Defendants seek

GOVERNMENT'S RESPONSE TO MOTION TO COMPEL - 4
CR16-5110RJB/CR15-387RJB/CR15-274RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

discovery concerning matters that are privileged and wholly immaterial to the preparation of their defense.

To begin, the information Defendants seek is privileged and shielded from production. In seeking documents and reports related to the approval of an investigation and its legality, Defendants requests necessarily entail discovery of material containing the advice and opinions of government attorneys and other documents prepared by government attorneys in anticipation of litigation. At a minimum, then, the discovery Defendants request is subject to the attorney-client, attorney work product, and/or deliberative process privileges. Moreover, Rule 16 explicitly excludes from subsection (a)(1)(E) "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. Proc. 16(a)(2); *see also United States v. Fernandez*, 231 F.3d 1240, 1246-47 (9th Cir. 2000) (applying deliberative process and work product privileges to bar production of death penalty evaluation form and prosecution memorandum). For that reason alone, the requests should be denied.

As important, Defendants have made no showing that the requested discovery is material. First, Defendants claim, without elaboration, that the requested discovery *will likely* confirm that the government knew that the NIT warrant ran afoul of Rule 41 and thus undercut its reliance on good faith. Motion to Compel at 2, 4. Defendants state no basis for their hope that any such information exists. Quite to the contrary, the government has consistently argued in this case and others that Rule 41 permitted the authorization of the NIT warrant, and many judges have agreed. Defendants are not entitled to the governments' internal analysis of complex legal and technological issues based entirely on their unsupported hope that it would reveal something they claim would be helpful.

Even if there were such a memorandum from a government attorney, that would change nothing. That lawyers for the government might disagree neither establishes the

GOVERNMENT'S RESPONSE TO MOTION TO COMPEL - 5
CR16-5110RIB/CR15-387RJB/CR15-274RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

law nor establishes bad faith. The full extent of the government's actions were disclosed to the magistrate judge who signed the NIT warrant. And as noted in the government's response to Defendants' motion to suppress, this was not the first time the government had successfully obtained approval for and deployed similar investigative techniques. *See, e.g.*, CR16-5110 Dkt 60 at 33-34. Put simply, even if there were material responsive to Defendants' request, it would not do nothing to advance their cause.

Nor is information concerning the "review and approval" of the operation relevant to Defendants' claims of outrageous government conduct. The six-factor test established by the Ninth Circuit focuses on the defendant, the government's role in the defendant's criminal activity as it pertains to the defendant, and the need for the particular investigative technique. The information sought by Defendants does nothing to advance this inquiry, and Defendants make no effort to explain otherwise.

**B.     Requests 2 and 3 have no bearing on Defendants' claim that the government's conduct was outrageous.**

Requests 2 and 3 seek copies of "any reports made to the National Center for Missing and Exploited Children (NCMEC) regarding child pornography posted on the Playpen web site" and "any notifications that were sent to victims by the Government for obtaining restitution related to images that were posted on, or distributed from, the Playpen web site." Motion to Compel at 2-3. Defendants merely speculate as to the pertinence of such information, which they claim is "likely" to yield evidence that the FBI did not "track or contain" child pornography on the Playpen site or, somehow violated the rights of victims.

Such reports have nothing to do with Defendants, their conduct, or the government's conduct with respect to Defendants. Indeed, they have no bearing on Defendants' guilt or innocence, and accordingly, will in no way assist them in preparing their defense to the charged offenses. Nor, for the same reasons, is this material relevant to Defendants' dismissal motion alleging that the government's investigative technique was outrageous. There is no dispute that Playpen users were able to distribute child

GOVERNMENT'S RESPONSE TO MOTION TO COMPEL - 6
CR16-5110RJB/CR15-387RJB/CR15-274RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

pornography during the six months prior to the FBI seizure of the site, and during the two weeks following that seizure. Defendants claim that to be outrageous; this Court has already disagreed. Accordingly, none of this information is material to any defense or their motions. So too with their stated concern for the rights of victims. Whether the government has complied with its obligations to victims is not something that the defense has a right to assert.

### C.   Request 4 seeks information that is irrelevant and immaterial.

Defendants request the "number of new images and videos (i.e. content not previously identified by NCMEC) that was posted on the site between February 20, 2015 and March 5, 2015." Motion to Compel at 3. Defendants make no claim that this information has any relevance to their charged offenses, which it does not. Rather, they say, "it is likely to reveal evidence that the FBI's operation of Playpen resulted in the posting and distribution of new[2] child pornography." *Id*.

Defendants end there, however, offering no explanation of the basis for their speculative conclusion or why such evidence would be relevant to defending the charges that *they* received and possessed child pornography. As noted, it is not disputed that the FBI briefly assumed administrative control of a website that was dedicated to the child pornography trade and that users were able to post child pornography to the website. Defendants have taken issue with the FBI's chosen investigative strategy in their dismissal motion, and the government has responded, explaining why its approach was reasonable given the challenges it faced. Even assuming the Defendants' speculative claim were true, additional detail about what images were distributed by Playpen's users

---

[2] "New" is a misnomer. That the child depicted in a particular image of child pornography has not been identified by NCMEC may indicate that it has not previously been received or identified by NCMEC, but it does not mean that the image was newly created. In fact, law enforcement's discovery of an as-yet-unseen image of child pornography frequently leads to the identification and rescue of the victim depicted. For example, in some cases, the image may be part of a larger series of images but contain an as-yet-unseen detail that can help determine the victim or perpetrator's location or identity.

GOVERNMENT'S RESPONSE TO MOTION TO COMPEL - 7
CR16-5110RJB/CR15-387RJB/CR15-274RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

during the brief period of FBI control will make no difference to the application of the *Black* test and thus has zero relevance to this case.

**D.     Requests 5 and 6 are overbroad and seek information that is irrelevant and immaterial.**

Defendants seek "the names of all agents, contractors or other personnel who assisted with relocating, maintaining and operating Playpen while it was under Government control" and copies of "all notes, emails, reports, postings, etc. related to the maintenance, administration and operation of Playpen between February 20, 2015 and March 5, 2015." Motion to Compel at 3. The scope of Defendants' requests is staggering and can only fairly be described as a quintessential "fishing expedition." Their requests are in no way targeted at materials related to their own activity on Playpen; rather, they simply demand that the government throw open its files for inspection and name all of its employees and agents on the off chance they might find something of interest.

Defendants justify their request once again by holding up their dismissal motion and the need to develop evidence in support. As they do throughout, however, they fail to present any facts in support of the request or explain how information about the operation of the site could support their dismissal argument.

In their initial motion to dismiss, Defendants leveled numerous accusations that the FBI modified Playpen or otherwise enhanced its functionality. In its responsive pleading, the government explained why those claims are premised upon incorrect information and are untrue. *See* CR16-5110 Dkt 56, CR15-387 Dkt. 102, and CR15-274 Dkt. 115; Declaration of Special Agent Daniel Alfin (Filed as CR16-5110 Dkt 56-1, CR15-387 Dkt. 102-1, and CR15-274 Dkt. 115-1). To the extent the Defendants still contend their incorrect claims to be true, the remedy is to have an evidentiary hearing about that issue, not to grant them discovery premised on incorrect information. But the Court need not settle that dispute, if it still exists, to resolve the matter at hand. None of

GOVERNMENT'S RESPONSE TO MOTION TO COMPEL - 8
CR16-5110RJB/CR15-387RJB/CR15-274RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the *Black* factors look to the sort of evidence Defendants claim might be found if they were permitted the requested discovery. And they are not otherwise entitled to it.

**E.     Request 8 seeks information that is irrelevant and, to the extent it exists, would be classified.**

Defendants seek copies "of all correspondence, referrals and other records indicating whether the exploit used in the Playpen operation has been submitted by the FBI or any other agency to the White House's Vulnerability Equities Process (VEP) and what, if any, decision was made by the VEP." Motion to Compel at 4. Other than noting the existence of the VEP, Defendants make no claim about why that request is relevant to the issues in their case. Nor could they, because information about whether or not the exploit was submitted to the VEP, which is an internal governmental coordinating mechanism, would confer no rights on Defendants or otherwise provide grounds upon which to challenge the government's evidence in this case.

Even if it were material to any issues in these cases, such information, insofar as it existed, would be classified. The government has requested to submit information pertinent to the nondisclosure of the exploit and related information *ex parte* and *in camera*, and with appropriate protections for classified information, as this Court allowed it to do in *Michaud*. Such information as exists pertaining to the pertinent exploit and the VEP could accordingly be submitted to the court under those protections.

**F.     Request 9 seeks information related to the FBI's hosting of Playpen that is irrelevant and immaterial, and which does not exist.**

Request 9 seeks copies "of invoices and other documents for the hosting facility/facilities" used during the operation and "documents revealing whether the Government informed the hosting provider(s) that child pornography would be stored in their facility or transmitted over their networks." Motion to Compel at 5. Here again, the Defendants fail to put forth any meaningful claim of materiality. In any event, the request is moot because there is no information to provide or compel in response. The Playpen site was hosted at a government facility while under FBI control.

GOVERNMENT'S RESPONSE TO MOTION TO COMPEL - 9
CR16-5110RIB/CR15-387RJB/CR15-274RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**G.   Requests 10-12 seek information concerning other investigative targets that is irrelevant and immaterial.**

Requests 10 and 11 seek information about other investigative targets that arose from the FBI's use of the NIT. Specifically, they request information about the number of investigative targets that have not been criminally prosecuted and the total number of IP and MAC addresses collected through the deployment of the NIT. Motion to Compel at 5. They assert that this request is relevant to their suppression argument because it will "help establish that the FBI misrepresented in the NIT warrant application the likelihood that visitors to Playpen were intentionally seeking to download or distribute child pornography and the ability of the NIT to accurately identify legitimate targets." *Id.*

Defendants' premise is flawed in several important respects. First, the request by its nature seeks information that has nothing to do with any of the charged defendants, their activity on the website, or any government interaction with them. The requests accordingly have no bearing on Defendants' guilt or innocence and could not assist them in preparing their defense to any charged offenses.

Next, Defendants claim that post-warrant-execution information (such as how many IP/MAC addresses were collected or how many individuals have been prosecuted) should somehow inform the Court's analysis of the pre-execution showing of probable cause. That makes no sense. The facts outlined in the NIT warrant either supported probable cause for the deployment of the NIT (as this court and every other court to look at this issue has found) or they did not. The number of targets identified or charged as a result is utterly irrelevant to that analysis, just as whether or not evidence is recovered during a search does not impact the analysis of whether probable cause existed to support the search. This is particularly nonsensical in the context of how the NIT warrant was executed. The NIT warrant gave the FBI the authority to deploy the NIT to Playpen users who logged-in to the site. But the FBI explained in the warrant affidavit that, in order to ensure technical feasibility and avoid detection, it might deploy the NIT more discretely against particular users who had attained greater status or users who accessed

GOVERNMENT'S RESPONSE TO MOTION TO COMPEL - 10
CR16-5110RJB/CR15-387RJB/CR15-274RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  certain sub-forums of the site where the most egregious examples of child pornography
2  was accessible. *See* NIT Aff. pp. 24-24, n. 8. Accordingly, the FBI told the magistrate
3  judge that it might not deploy the NIT to every Playpen user who logged in. As a
4  practical matter – as Special Agent Alfin explained during testimony in the Michaud case
5  – that is how the NIT was deployed: *i.e.*, to a narrower category of users than authorized.
6  Accordingly, any difference between the number of IP and MAC addresses identified via
7  the NIT and the total number of user logins provides no basis to challenge any
8  representations to the magistrate judge.

9        Nor would the number of targets prosecuted have any relevance to Defendants'
10 claims. There are innumerable reasons why, in an individual prosecutor's discretion, a
11 particular prosecution is or is not brought at a particular time. It would accordingly be
12 pure speculation on the part of Defendants to claim that any difference between the
13 number of IP addresses identified via the NIT and the current number of prosecutions has
14 anything to do with purported "misrepresentations" to the magistrate judge.

15       Request 12, which seeks information concerning the number of IP and MAC
16 addresses belonging to computers outside the United States and the corresponding
17 country, Motion to Compel at 6, likewise fails. Yet again, the request by its nature seeks
18 information that has nothing to do with any of the charged defendants, their activity on
19 the website, or any government interaction with them. The requests accordingly have no
20 bearing on Defendants' guilt or innocence and could not assist them in preparing their
21 defense to any charged offenses. The crux of Defendants' argument is that this
22 information is necessary so they can determine the extent to which the FBI's
23 investigation violated foreign law and/or U.S. treaty obligations. Even if that were the
24 case, Defendants would not benefit. There is no dispute that Defendants were in the
25 United States when they accessed Playpen and the NIT was deployed to their computers.
26 The search of their homes and the seizure of the evidence that resulted in the instant
27 charges likewise occurred domestically. Any foreign law or U.S. treaty obligations
28 therefore have no bearing whatsoever on these Defendants' activities.

GOVERNMENT'S RESPONSE TO MOTION TO COMPEL - 11
CR16-5110RIB/CR15-387RJB/CR15-274RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to compel should be denied.

DATED this 14th day of October, 2016.

Respectfully submitted,

| | |
|---|---|
| ANNETTE L. HAYES<br>United States Attorney | STEVEN J. GROCKI<br>Chief |
| /s/ Matthew P. Hampton<br>Matthew P. Hampton<br>Assistant United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, Washington 98101<br>Telephone: (206) 553-7970<br>Fax:         (206) 553-0755<br>E-mail:    matthew.hampton@usdoj.gov | /s/ Keith Becker<br>Keith Becker<br>Deputy Chief<br>Child Exploitation and Obscenity Section<br>1400 New York Ave., NW, Sixth Floor<br>Washington, DC 20530<br>Phone: (202) 305-4104<br>Fax: (202) 514-1793<br>E-mail: keith.becker@usdoj.gov |

|   |   |
|---|---|
| 1 | CERTIFICATE OF SERVICE |
| 2 | I hereby certify that on October 14, 2016, I electronically filed the foregoing with |
| 3 | the Clerk of the Court using the CM/ECF system which will send notification of such |
| 4 | filing to the attorney(s) of record for the defendant(s). |

*s/Emily Miller*
EMILY MILLER
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-2267
FAX: (206) 553-0755
E-mail: emily.miller@usdoj.gov

GOVERNMENT'S RESPONSE TO MOTION TO COMPEL - 13
CR16-5110RJB/CR15-387RJB/CR15-274RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970