1   JUDGE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR16-5110RJB |
| Plaintiff, | ) ) | **CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND MOTON TO COMPEL** |
| v. | ) ) ) | |
| DAVID TIPPENS, | ) ) | |
| Defendant. | ) ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR15-387RJB |
| Plaintiff, | ) ) | **CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND MOTON TO COMPEL** |
| v. | ) ) ) | |
| GERALD LESAN, | ) ) | |
| Defendant. | ) ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR15-274RJB |
| Plaintiff, | ) ) | **CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND MOTON TO COMPEL** |
| v. | ) ) ) | |
| BRUCE LORENTE, | ) ) | |
| Defendant. | ) ) | |

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO COMPEL
(*United States v Tippens, et al.*) - 1

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

## I. REPLY ARGUMENT

### A. There Is Substantial Unrefuted Evidence of an Unlawful Investigation by the FBI That Resulted in the Needless and Widespread Revictimization of Minors.

The Government maintains that "[t]here can be little doubt the government's investigation approach was necessary," dkt. 56 at 9, and that "reasonable people may debate whether law enforcement could have used other methods." *Id*. at 2. To the contrary, the Government has previously been excoriated for distributing child pornography as part of a sting operation and warned against doing so again. Having elected to ignore that warning, the Government cannot complain if this Court takes appropriate measures to hold it accountable.

In *United States v. Sherman*, 268 F.3d 539 (7th Cir. 2001), federal agents supplied the defendant "with a literal catalog of child pornography, and then delivered to him materials that depicted actual children, allowing him enough time to view and even copy the materials before arresting him." *Id*. at 548. The Government justified its investigatory methods by arguing that its "larger purpose" was preventing further crimes. *Id.* at 548-49. The court was unpersuaded by that justification and firmly rebuked the Government for its tactics:

> [T]he government's participation in criminal activity in the course of an investigation should rarely, if ever, involve harming actual, innocent victims…. We are aware of the necessity of such tactics in so-called victimless crimes such as drug offenses, but the use of these methods when victims are actually harmed is inexplicable. Moreover, the government's dissemination of the pornographic materials to Sherman could hardly be described as a "controlled" delivery of the materials. Given the length of time that Sherman was allowed to possess these materials before he was arrested, the government's conduct here could easily have led to further victimization of the children depicted because the defendant had an opportunity to copy the materials and disseminate them to others.

*Id.* at 549.

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO COMPEL
(*United States v Tippens, et al.*) - 2

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

While recognizing that investigating pornography offenses can be difficult, the court went on to state that "[w]e have no doubt that creative investigative techniques and tight controls on the materials used as bait for the consumers of child pornography can lead to better protection of the victims of child pornography." *Id.* at 550. While the defendant had not raised an outrageous conduct claim, and such a defense at trial is not viable in the Seventh Circuit, the court nevertheless took it upon itself to "caution the government that its investigative technique in this case was inconsistent with its position. . . that the children depicted are harmed by the continued existence of and mere possession of child pornography." *Id.*

The heedlessness and harm that so troubled the Seventh Circuit in *Sherman* pales in comparison to the FBI's methods in Operation Pacifier. This Court need only consider the facts that are known about the operation at this point to conclude that the Government may well continue to use unethical and unlawful investigatory methods in Internet investigations unless the Court orders full disclosure of the operation and imposes appropriate sanctions.

First, the Government does not dispute that the FBI distributed 1,000,000 or more picture and videos of child abuse. *See* Motion to Dismiss (dkt. 32) at 4.[1] While the Government maintains that it did not "post" any child pornography on Playpen because it was members who were loading or linking content (dkt. 56 at 2), it is the FBI that maintained the "file hosting" features that enabled users to do that and also allowed them to download and redistribute all of the postings. In addition, the available visitor comments that were posted while the FBI was running Playpen show much improved "customer satisfaction." If nothing else, it appears that the FBI's relocation of the server to a government facility resulted in faster and more reliable "connectivity" to the site. As a result, to use an analogy from drug investigations, the visitors who posted on

---

[1] Docket references, unless otherwise indicated, are to entries in the *Tippens* docket.

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO COMPEL
(*United States v Tippens, et al.*) - 3

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Playpen may have been pornography couriers, but it was the FBI that assumed the role of distribution kingpin.

Second, in the course of a 14 page reply to the defendants' motion, the Government is silent on the issue of its violation of 18 U.S.C. § 3509(m), which expressly requires law enforcement agencies to maintain "custody and control" of any child pornography that they seize. The Government has construed this and related provisions in other contexts so strictly that it has even supported imposing damages on a defense expert who digitally altered stock pictures to make it appear that children were engaged in sexual activity, as part of misguided trial demonstrations showing the difficulty of determining whether a picture depicts a real child. Brief of the United States in Opposition to Petition for Writ of Certiorari in *Boland v. Doe* (No. 12-987) (United States Supreme Court, May 17, 2013), 2013 WL 2152662. But when it comes to the FBI operating, at least briefly, as the world's largest distributor of child pornography, the Government is unable to direct the Court to any statutory or other exemption for the FBI's actions. And, perhaps most tellingly, it makes no attempt to explain how the FBI's redistribution of a 1,000,000 or more images can be reconciled with the Government's oft-expressed concerns about revictimization. Whatever merit there may be to a Government argument that the laws *in general* do not apply to law enforcement investigations (such as, for example, possession of narcotics), that argument cannot encompass a specific Congressional directive that law enforcement not redistribute a particular type of contraband .

Third, the Government suggests that in this case the ends justified the means because a number of children have been saved from abuse as a result of Operation Pacifier. However, every one of the scores of Pacifier cases that the defense is aware of have involved routine possession charges. The Government has not identified any cases where there was direct intervention on behalf of a child, and in fact it has declined to

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO  COMPEL
(*United States v Tippens, et al.*) - 4

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  disclose related information, such as how it selected a relatively small number of
2  defendants for prosecution amidst approximately 100,000 Playpen visitors.
3        Fourth, the fact that the Government may have rescued children as a result of
4  Operation Pacifier is both laudable and irrelevant. The core of the defendants' argument
5  is that the FBI could have accomplished all of its investigatory goals (including
6  identifying new victims) without becoming the world's largest distributor of child
7  pornography. It was the methods used during investigation, not the results of the
8  investigation itself, that so troubled the court in *Sherman*.
9        Here, the NIT warrant allowed the FBI to identify targets when they were still on
10 Playpen's home page. Having sought such sweeping search authorization, there was no
11 need to allow users to upload or download anything in order to locate targets. Hence,
12 the fact that children may have been rescued because particular users were identified by
13 the NIT in no way explains why the FBI kept Playpen "fully functional" and allowed
14 pictures of those children to flood the Internet.
15       The Government is also silent about why the FBI kept the "How To" section up
16 and running on Playpen, which was essentially an advice forum on how to molest
17 children. *See* Motion to Dismiss at 4.
18       Fifth, the Government does not dispute that there are viable technical means of
19 maintaining the credibility of a site like Playpen for undercover purposes while at the
20 same time limiting the ability of visitors to post or download actual child pornography.
21 *See* Motion to Dismiss at 9. While the Government has previously claimed that it did
22 not want to do anything to alter the site in order to avoid alerting visitors to possible law
23 enforcement intervention, that rationale has proven to be specious.
24       Specifically, when confronted with evidence suggesting that the FBI improved
25 the functionality of its site, the Government submitted a declaration from Agent Daniel
26 Alfin in which he states that the FBI closed down an entire section of Playpen, the

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO COMPEL
(*United States v Tippens, et al.*) - 5

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

"producers forum." September 22, 2016, Declaration of Alfin (dkt. 56-1) at ¶ 7. Alfin goes on to explain that "[p]ostings made by the undercover FBI agent [posing as the site's administrator] that the section would eventually return were intended to keep users from discovering the law enforcement takeover." *Id*. The Government makes no attempt to explain why similar (and quite simple) efforts were not taken to slow or impede the redistribution of at least the most egregious images that the FBI maintained on the site.

Equally problematically, Alfin notes in his latest declaration that "connectivity issues" are common with Tor sites, and that not even Tor developers can explain why users often have problems viewing and downloading content on the network. Dkt. 56-1 at ¶ 11. In fact, slowdowns, interrupted downloads, blocked files, and other problems are so commonplace on Tor sites that the FBI was unconcerned about users receiving "error messages" (like "file not found" or "file hosting is temporarily down while we fix a bug") when they tried to follow various links that were no longer available after the FBI rebooted Playpen. Exh. A (*United States v. Anzalone*, CR15-10347PBS, Transcript of October 14, 2016 Hearing) at 57-58.[2] If all that is true, then the Government is hard pressed to explain why it did not make even a minimal effort to curtail the redistribution of Playpen's content.

Finally, Agent Alfin has recently testified that Operation Pacifier was approved and supervised at senior levels of DOJ and the FBI. *Id.* at 43-46. Incredibly, while Alfin indicated that there was at least some high level review of the operation, DOJ and the FBI established *no protocols whatsoever* for the handling and containment of the pornography on the site. *Id*. at 57.

---

[2] Agent Alfin offered his testimony during a limited hearing on the defendant's motion to dismiss based on outrageous governmental conduct, which the court ultimately denied.

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO  COMPEL
(*United States v Tippens, et al.*) - 6

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

In short, reasonable people may debate whether using an undercover site like Playpen is appropriate if the FBI makes every effort to avoid the revictimization of children. But no reasonable person can condone an operation that is so focused on pushing the legal and technical envelopes for deploying "network investigative techniques" that the lawyers and agents involved in that operation make no effort to minimize the revictimization and collateral damage caused by their investigation.

The Government avoids explaining its actions by offering a purely legalistic response to the defendants' motion that, even from a legal standpoint, misses the mark. The Government measures its conduct against a list of factors, most of which are inapplicable to the type of harm involved here, that are discussed in *United States v. Black*, 733 F.3d 294, 303 (9th Cir. 2013). *See* dkt. 56 at 5-8. Those factors are relevant to assessing the outrageousness of governmental action when a defendant has specifically alleged that law enforcement officers involved the defendant in a crime. *See id.* at 302. The defendant's claim in such cases is akin to a claim of entrapment, but where the facts fall short of the legal criteria for entrapment (such as, for example, where the defendant had a predisposition to commit the offense). *See*, *e.g.*, *United States v. McClelland*, 72 F.3d 717, 726 (9th Cir. 1995).

But that is not at all the kind of outrageous conduct that the defendants have identified. Rather, their argument is that the Government has violated the law by distributing child pornography; subjected those portrayed in a million or more images to revictimization; and set loose those images for untold number of repostings that the Government cannot ever control or recover.

More specifically, as *Black* itself states, the factors it lists are not a "formalistic checklist," and whether "law enforcement conduct crosses the line between acceptable and outrageous" requires that "every case must be resolved on its own particular facts."

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO COMPEL
(*United States v Tippens, et al.*) - 7

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

733 F.3d at 302, 303 (citation omitted). The ultimate test is one of the "totality of circumstances[.]" *Id.* at 304. A totality of the circumstances test requires the Court to focus its analysis on the relevant circumstances, not ones the Government would prefer to highlight but that are unrelated to the defendants' claim.

Here, the first four factors suggested in *Black* relate to the defendant, the grounds for targeting him, and the relative responsibility that the Government and the defendants each have for their alleged involvement in the crime. These factors are not relevant to a claim that the Government has acted outrageously by committing unethical or illegal acts as part of an investigation. Accordingly, given the type of conduct at issue here, the relevant inquiry is the nature of the harm to those victims, along with the last two *Black* factors, namely the nature of the Government conduct and the necessity for that conduct. As addressed above, the available facts amply demonstrate that (according to the Government's own views) there was substantial harm to victims; the nature of the Government's conduct was both unlawful and callous; and there was no investigatory need for that conduct.

In the final analysis, the FBI could have maintained Playpen as a credible undercover site and deployed its NITs without becoming a massive distributor of child pornography. The fact that it chose not to do so should lead to the Court to conclude that further discovery is appropriate, and ultimately grant the defendants' motions for dismissal.

    **B.**    **The Defendants are Entitled to Discovery That is Material to Their Pending Dismissal, Suppression and *Franks* Motion, as well as Other Important Issues.**

The Government wants this Court to ignore recent Ninth Circuit law that supports our discovery requests and instead apply cases from 20 or more years ago. *See* Govt. Response at 2-3 (citing, *inter alia*, *United States v. Armstrong,* 517 U.S. 456

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO COMPEL
(*United States v Tippens, et al.*) - 8

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

(1996)). The Court of Appeals, however, has explained the evolution of its discovery requirements and that "our post-*Armstrong* case law within the Ninth Circuit indicates that Rule 16(a)(1)(E) permits discovery related to the constitutionality of a search or seizure." *United States v. Soto-Zuniga*, __ F.3d __, 2016 WL 4932319 *6 (9th Cir. Sept. 16, 2016) (9th Cir. Sept. 16, 2016). Although the court referred to discovery related to search and seizure issues, the opinion makes clear that the Rule requires discovery so long as it is material to legitimate pretrial motions or potential defense. The court went on to explain the limited scope of *Armstrong* (contrary to the Government's reliance on it here): "[W]e do not read *Armstrong* to preclude Rule 16(a)(1)(E) discovery related to the constitutionality of a search or seizure. In our view, the holding of *Armstrong* applies to the narrow issue of discovery in selective-prosecution cases." 2016 WL 4932319 at *6.

Nevertheless, relegating *Soto-Zuniga* to a footnote (and ignoring all the other cases this Court relied on for the discovery orders in *Michaud*), the Government maintains that our requests for documents related to the outrageous conduct, *Franks* and jurisdictional issues are not discoverable since judges have declined to suppress evidence based on those issues. Govt. Response at 5. Of course, what judges in other circuits have done provides limited guidance here, and in fact those denials only underscore the need for disclosure in the instant cases.

For reasons that are unclear, none of the defendants in the cases cited by the Government moved for dismissal based on outrageous governmental conduct or raised *Franks* issues. They also did not seek additional discovery related to the jurisdictional issues and the Government's invocation of the "good faith" exception. Any shortcomings in the issues raised by defendants elsewhere should not be held against Mr. Tippens, Mr. Lorente or Mr. Lesan. It is also a complete *non sequiter* for the Government to cite cases where the defendants failed to seek or obtain material

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO COMPEL
(*United States v Tippens, et al.*) - 9

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

discovery, and then maintain that the resulting court decisions (based on incomplete discovery) somehow demonstrate why that discovery is not needed. Furthermore, the Government's argument flies in the face of *Soto-Zuniga*, by suggesting that a defendant must first show that a motion will succeed in order to obtain discovery that might support the motion.

If this Court concludes that the discovery sought by the instant defendants is material, the only remaining question is whether the Government has legitimate grounds for continuing to withhold it. The problem for the Government is that, even if it is entitled to withhold the discovery, the Court must then determine what sanctions for non-disclosure are needed to ensure fair trials for the defendants. To do otherwise would be an abuse of discretion, as the decision in *Soto-Zuniga* makes plain.

And there can be no credible dispute that the fundamental fairness of these proceedings are at stake. To begin, the Government wants to have it both ways when it comes to maintaining that it did not deliberately violate Rule 41 and its assertion of the good faith exception. On one hand, the Government maintains that it "reasonably concluded" that it could seek a worldwide warrant and therefore the jurisdictional violations were not deliberate. *See* Govt. Response to Motion to Suppress (dkt. 60) at 40. It has also repeatedly touted the training and experience of the agents who prepared and submitted the NIT warrant application as a reason to find "good faith." *See, e.g., id.* at 9.

At the same time, however, we know that DOJ's internal policies and guidelines considered multi-jurisdictional warrants to be invalid. *See* Defendants' Motions to Suppress (dkt. 35) at 21-23. We also know, based on Agent Alfin's testimony on October 14, that there were some debate within the higher ranks of DOJ and the FBI about Operation Pacifier. *See* exh. A. Having claimed that it did not act deliberately and

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO COMPEL
(*United States v Tippens, et al.*) - 10

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

invoked the good faith exception, the Government should not be allowed to withhold discovery that the defense needs to challenge those arguments.

It is also no answer for the Government to claim a work product privilege or other exemptions for the discovery. *See* Govt. Response at 4. Even if these privileges are valid, all that means is that if the Government continues to stand on its privileges, the Court will have to determine an appropriate discovery sanction that vindicates their rights to effective representation and due process.

Thus, in *Soto-Zuniga*, the Ninth Circuit recognized that some of the law enforcement records sought by the defendant were "sensitive" and the Government was not necessarily required to disclose them. Yet, "[w]hile we recognize the sensitive nature of the documents in question, Soto-Zuniga's interest in government materials that are pertinent to his defense takes precedence." or 2016 WL 4932319 at *8. The Court then instructed the trial court that it should allow the Government a "window of time" to choose between waiving its privileges and disclosing, or discovery sanctions. *Id*.

Consistent with the instructions in *Soto-Zuniga*, the defense submits that if the Government does not provide items 1, 7 and 8 of the discovery sought by the defendants based on an assertion of privileges (*see* Govt. Response at 4 and 9), it should be precluded from arguing that its violations of the Federal Magistrate Act and Rule 41 was not deliberate. It should also be precluded from relying on the good faith exception.

As to the remaining discovery requests (including, *inter alia*, documents and records relating to the FBI's operation of Playpen), the Government cannot assert any privilege for the reports of agents or others who administered Playpen, or similar records related to the site's operation. Instead, ignoring the broad materiality standards summarized in *Soto-Zuniga*, the Government simply maintains that these records are irrelevant. Govt. Response at 6-8.

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO COMPEL
(*United States v Tippens, et al.*) - 11

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Likewise, requests 10-12 concerning investigative targets are plainly relevant to our overbreadth argument; the NIT warrant's lack of particularity and other potential suppression issues; and the governmental misconduct issues.

Finally, the defendants reiterate that they have no objection to whatever protective measures the Court deems appropriate for review of the requested discovery, including limiting review to counsel of record at a Government office.

## II.  CONCLUSION

For the reasons stated above, the defendants respectfully request that the Court grant the defendants' Motion to Compel Discovery or, in the alternative, impose appropriate sanctions for non-disclosure.

DATED this 18th day of October, 2016.

Respectfully submitted,

*s/ Colin Fieman*
Colin Fieman
Attorney for David Tippens

*s/ Robert Goldsmith*
Robert Goldsmith
Attorney for Gerald Lesan

*s/ Mohammad Hamoudi*
Mohammad Hamoudi
Attorney for Bruce Lorente

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO COMPEL
(*United States v Tippens, et al.*) - 12

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties registered with the CM/ECF system.

s/ *Amy Strickling, Paralegal*
Federal Public Defender Office

CONSOLIDATED REPLY IN SUPPORT OF MOTION
TO DISMISS AND MOTION TO COMPEL
(*United States v Tippens, et al.*) - 13

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710